UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CHARLES DAVID WHEELER, SR., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN LONG; FRANK MARTINEZ; PINE RIDGE POLICE DEPT.; and PINE RIDGE HOSPITAL, <br><br> Defendants. | 5:24-CV-05008-CCT <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL, AND 1915 SCREENING** |

Plaintiff, Charles David Wheeler, Sr., filed a pro se civil rights lawsuit. Docket 1. Wheeler moves for leave to proceed in forma pauperis, Docket 2, and moves for the appointment of counsel, Docket 3.

**I.   Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Wheeler's financial

affidavit, the court finds that he has insufficient funds to pay the filing fee. Thus, Wheeler's motion for leave to proceed in forma pauperis (Docket 2) is granted.

## II. 1915 Screening

### A. Factual Background

Over thirty years ago, in March 1991, Wheeler and his daughter were visiting family on the Pine Ridge Reservation. Docket 1-1 at 2, 14, 31. Wheeler's sister told him that she was assaulted by two men, and Wheeler spoke to the two men and asked them why they assaulted his sister. *Id.* at 13. The two men then attacked Wheeler. *Id.* When the police arrived, the two men fled. *Id.* Police caught one of the men, but the other man escaped. *Id.* at 14. Wheeler pushed an officer and yelled at the officer to do his job and go get the men. *Id.* Officers of the Pine Ridge Police Department then wrestled Wheeler to the ground and placed him in handcuffs. *Id.*

Wheeler alleges that Pine Ridge Police Department Officers, including John Long, attempted to murder him by torturing him when he was on the ground with his hands cuffed behind his back. *Id.* at 2; Docket 1 at 1. Officers broke Wheeler's thumb on his left hand. Docket 1 at 1; Docket 1-1 at 5. Long also commanded officers to jump on top of Wheeler, suffocating him. Docket 1 at 1; Docket 1-1 at 4–5. Wheeler passed out. Docket 1 at 1. When Wheeler awoke, officers were beating him with clubs, pushing him face-first into the squad car, and bleeding him out. *Id.*; Docket 1-1 at 3. Wheeler was covered in so much of his blood that his shoes were soaked. Docket 1-1 at 3.

2

After the attack, Long pulled Wheeler so all the officers could look at him and then took off his handcuffs. *Id.* at 4. Long walked away laughing and boasting about beating up Wheeler. *Id.* The officers then got in their cars and left Wheeler for dead. *Id.*; Docket 1 at 1.

Pine Ridge Police Officer Frank Martinez pulled up to the scene as the other officers were leaving. Docket 1-1 at 4. Martinez was calling "Charlie Charlie." *Id.* Wheeler alleges that police officers should not have known his name because he did not live at Pine Ridge and was only visiting. *Id.* Martinez asked Wheeler who attacked him, and Wheeler, sobbing and crying, replied, "They did . . . They did the police." *Id.* at 5. After talking to another officer, Martinez loaded Wheeler in the front passenger seat of his police car. *Id.* Martinez drove Wheeler to the hospital, while someone else drove Wheeler's truck to the jail. *Id.*

When Martinez and Wheeler arrived at the hospital, Martinez had Wheeler walk thirty minutes from the parking lot to the emergency room entrance. *Id.* Wheeler was seen by a man in a lab coat, who cleaned the blood from Wheeler's face and put gauze up his nose. *Id.* at 6.[1]

Martinez then walked Wheeler back to the police car and drove him to the jail, where Wheeler was placed in a dark cell. *Id.* Wheeler drank some water from the water fountain in the cell, but he vomited blood into the water

---

[1] Wheeler also alleges that his mother was taken via ambulance to the Pine Ridge Hospital after his father threw her out a window and that his father was taken to the Pine Ridge Hospital after he was stabbed, but it is unclear if these separate events relate to Wheeler's claims against the Pine Ridge Hospital. *See* Docket 1-1 at 17–18, 21.

fountain. *Id.* at 6–7. Wheeler also used the water fountain to attempt to decrease the swelling in his face. *Id.* at 6. Because of his injuries, Wheeler was only able to see through a straw-sized hole when he held his eye open. *Id.* at 22.

One of the men who had attacked Wheeler was placed in the cell with him and was threatening and again attempting to attack Wheeler. *Id.* at 6–7. Another detainee stopped the attack and yelled for the jailer; the jailer removed the man who attacked Wheeler. *Id.* at 7–8. The other detainee moved Wheeler into his cell and asked him who attacked him; Wheeler told him the Pine Ridge Police and described the events. *Id.* at 8.

The next morning, the jailer called into the cell and informed Wheeler that he was released. *Id.* at 22. When Wheeler was leaving, he spoke with a different jailer at the front desk and requested his wallet and truck keys. *Id.* The jailer told him that he did not have a wallet on him and refused to provide him the truck keys because it was not registered to him. *Id.* at 22–23. Wheeler explained that the truck was registered to his mother-in-law, but his mother-in-law had gifted the truck to his wife. *Id.* at 23. The jailer sent Wheeler to dispatch to talk about getting back the truck. *Id.* The man in dispatch yelled at Wheeler that the owner needs to come in person and bring documentation showing proof of ownership. *Id.* at 23–24. Wheeler was sent back to the jailer. *Id.* at 24. The jailer asked Wheeler if dispatch approved for her to give him the keys. *Id.* Wheeler said yes, and the jailer give him the truck keys. *Id.* Despite barely being able to see out of his swollen eyes, Wheeler drove the truck to Hay

4

Springs, Nebraska. *Id.* at 24–25. In Nebraska, he stayed with some friends who helped decrease the swelling. *Id.* at 25–26. After the black eye healed, Wheeler's friends picked up his daughter from Pine Ridge. *Id.* at 26.

Wheeler's injuries caused his esophagus to stop working intermittently, which he alleges caused him to go at times up to five days without food and water. *Id.* at 27. Due to his injuries, Wheeler had his first surgery at the Flagstaff Medical Center in 1998. *Id.* However, the surgery was botched. *Id.* Wheeler had six surgeries between 2010 through 2011. *Id.* at 28.

Wheeler claims that watching "[G]eorge [F]loyd murdered on court TV" caused him to experience flashbacks of the attack by the Pine Ridge Police Department and other traumatic events that he and family members experienced. *Id.* at 2. *See also id.* at 9–22, 27 (describing Wheeler's traumatic memories related to other events that happened to him and family members). Wheeler alleges that he suffers from post-traumatic stress disorder because of the traumatic events. *Id.* at 9–11.

Wheeler does not specify if he sues defendants in their individual or official capacities. *See* Docket 1. "[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, this court must deem that Wheeler sues all defendants in only their official

capacities. He seeks money damages of $500 million for violation of his civil rights. Docket 1 at 3–4.

### B. Legal Background

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Bediako v. Stein Mart, Inc.*, 35 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*,

853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Id.* (citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).

    C.    **Legal Analysis**

        1.    **Claims Against Long and Martinez**

Wheeler sues Long and Martinez in only their official capacities. The only relief he seeks is money damages. Docket 1 at 4. It is unclear from Wheeler's complaint whether he alleges that Long and Martinez were employees of the

Bureau of Indian Affairs (BIA) or the Oglala Sioux Tribe.[2] *See* Docket 1 at 1 ("Officer John Long and several other [P]ine Ridge Reservation police officer[s] attempted murder of [him.]" (capitalization in original omitted)); Docket 1-1 at 10 ("when the B.i.a. police on the pine Ride S. DAK. indian Reservation Beat [him] to Death" (spelling and grammar errors in original)). Regardless of Long and Martinez's employer, Wheeler fails to state a claim upon which relief may be granted for the following reasons.

If Long and Martinez were employed by the Oglala Sioux Tribe, Wheeler's claim is barred by tribal sovereign immunity. "A suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." *Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 697 (8th Cir. 2019) (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997) (cleaned up)). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 670 (8th

---

[2] "The Pine Ridge Indian Reservation, situated in South Dakota's southwest, is among the largest in the United States and home to the Oglala Lakota Sioux." *Resilience in Public Safety on the Pine Ridge Reservation*, Oglala Sioux Tribe Dep't of Pub. Safety, https://ostdps.org/ (last visited Jan. 7, 2024). The Oglala Sioux Tribe Department of Public Safety's mission

> is to use and enforce the sovereign rights and authorities of the Oglala Sioux Tribe, including but not limited to those afforded to the Tribe by its inherent sovereignty, its treaties and agreements, and applicable law, to protect people and property located on the Pine Ridge Indian Reservation and to prevent outside interests from encroaching upon the sovereign rights and status of the Oglala Sioux Tribe.

*Id.* The Oglala Sioux Tribe Department of Public Safety is a tribal agency. *Schmidt v. Fire Thunder*, 5:05-CV-05097-KES, 2006 WL 8444861, at *3 (D.S.D. May 31, 2006). Tribal police officers at the Oglala Sioux Tribe Department of Public Safety are employed by the Oglala Sioux Tribe. *See Oglala Sioux Tribe v. United States*, 674 F. Supp. 3d 635, 645 & n.7 (D.S.D. 2023).

Cir. 2015) (citation omitted). "[C]laims against individual tribal officers acting in their official capacities [are] . . . barred by the Tribe's sovereign immunity." *Stanko*, 916 F.3d at 697. *See also Whiting v. Martinez*, 3:15-CV-03017-RAL, 2016 WL 297434, at *3 (D.S.D. Jan. 22, 2016) ("In a suit for damages, tribal immunity also protects tribal employees acting in their official capacities and within the scope of their authority, as the relief would run directly against the tribe itself." (citing *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1471 (8th Cir. 1999)).

If Long and Martinez were employees of the Oglala Sioux Tribe Department of Public Safety, then Wheeler's official capacity claims against Long and Martinez are claims against the Oglala Sioux Tribe. Wheeler does not contend that Congress has authorized this suit or that the Tribe has waived its sovereign immunity. Thus, if Long and Martinez were employees of the Oglala Sioux Tribe Department of Public Safety, then the official capacity claims against them are barred by tribal sovereign immunity.

If Long and Martinez were employees of the BIA,[3] Wheeler also fails to state a claim upon which relief may be granted.[4] "A *Bivens* claim is a cause of

---

[3] The BIA is a federal agency that's mission is "to enhance the quality of life, to promote economic opportunity, and to carry out the responsibility to protect and improve the trust assets of American Indians, Indian tribes, and Alaska Natives." *Bureau of Indian Affairs (BIA)*, USA.gov, https://www.usa.gov/agencies/bureau-of-indian-affairs (last visited Jan. 6, 2025).

[4] If Long and Martinez were employees of the federal government, Wheeler's claims against them in their official capacities could liberally be construed as tort claims under the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b)(1) (permitting recovery of money damages from the United States for certain torts caused by government employees acting within the scope of their duties). "The FTCA bars claimants from

action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). Wheeler does not sue Long and Martinez in their individual capacities.[5]

For these reasons, Wheeler's claims against Long and Martinez in their official capacities for money damages are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Claims Against Pine Ridge Police Department

Wheeler sues the Pine Ridge Police Department.[6] Docket 1 at 2. Police departments are not suable entities. *Ketchum v. City of West Memphis*, 974

---

bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Wheeler has not alleged that he exhausted his remedies under the FTCA before filing suit, and exhaustion is a jurisdictional prerequisite before filing a FTCA claim in district court. *Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996). Thus, Wheeler's tort claims under the FTCA are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to exhaust.

[5] Granting Wheeler leave to amend his complaint to allege an individual capacity *Bivens* claim would likely be futile because his claim would likely be barred by the statute of limitations. Because there is not a federal statute of limitations for *Bivens* actions, *Bivens* actions are governed by the same statute of limitations under 42 U.S.C. § 1983, which applies the statute of limitations for the state in which the claim accrues. *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) (citations omitted). SDCL § 15-2-15.2 provides a three-year statute of limitations for "[a]ny action brought under the federal civil rights statutes[.]" *See Bell v. Fowler*, 99 F.3d 262, 266 (8th Cir. 1995) (applying SDCL § 15-2-15.2 to a § 1983 case). Because Wheeler alleges that the events with Long and Martinez occurred over thirty years ago, an individual capacity *Bivens* claim would likely be barred by SDCL § 15-2-15.2.

[6] The formal name for the police force in Pine Ridge is the Oglala Sioux Tribe Department of Public Safety. Thus, this court assumes that Wheeler is suing the Pine Ridge Police Department as part of the Oglala Sioux Tribe Department of Public Safety.

F.2d 81, 82 (8th Cir. 1992); *De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam). Further, "[t]he Eighth Circuit has found that a tribe's sovereign immunity may extend to a tribal entity or agency." *Whiting*, 2016 WL 297434, at *3 (citing *J.L. Ward. Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*, 842 F. Supp. 2d 1163, 1171–72 (D.S.D. 2012) (collecting cases)). Wheeler does not contend that the Oglala Sioux Tribe has waived its tribal sovereign immunity. Thus, Wheeler fails to state a claim upon which relief may be granted against the Pine Ridge Police Department, and Wheeler's claims against the Pine Ridge Police Department are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Claims Against Pine Ridge Hospital

Wheeler sues the Pine Ridge Hospital, which he claims is a facility ran by Indian Health Services (IHS). Docket 1-1 at 5. *See also Pine Ridge Service Unit*, Indian Health Servs., https://www.ihs.gov/greatplains/healthcarefacilities/pineridge/ (last visited Jan. 6, 2025). IHS is an agency within the United States Department of Health and Human Services, which "provides federal health services to American Indians and Alaska Natives." *Indian Health Services (IHS)*, USA.gov, https://www.usa.gov/agencies/indian-health-service (last visited Jan. 6, 2025); *About IHS*, Indian Health Service, https://www.ihs.gov/aboutihs/ (last visited Jan. 6, 2025).

---

Even if Wheeler intended the "Pine Ridge Police Department" to indicate a local BIA office, he would fail to state a claim upon which relief may be granted because sovereign immunity extends to federal agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Wheeler does not contend that the United States has waived its sovereign immunity.

11

The United States and its agencies are generally immune from suit. *Meyer*, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir. 1998). A waiver of sovereign immunity is strictly and narrowly construed in favor of the United States, and the plaintiff bears the burden of demonstrating the waiver. *See Lane v. Pena*, 518 U.S. 187, 192 (1996); *V S Ltd. P'shp v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

Wheeler has not established that sovereign immunity has been waived.[7] Thus, Wheeler's claims against the Pine Ridge Hospital are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Thus, it is ORDERED:

1. That Wheeler's motion to proceed in forma pauperis (Docket 2) is granted.

2. That Wheeler's claims against Long and Martinez in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

3. That Wheeler's claims against the Pine Ridge Police Department are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[7] Even if this court were to liberally construe Wheeler's official claim for money damages against the Pine Ridge Hospital as a medical malpractice claim under the FTCA, Wheeler's claim would still be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to exhaust. *See supra* n.4.

12

4. That Wheeler's claims against Pine Ridge Hospital are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

5. That Wheeler's tort claims under the FTCA are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

6. That Wheeler's motion to appoint counsel (Docket 3) is denied as moot.

Dated January 10, 2025.

                                                                 BY THE COURT:

                                                                 /s/ *Camela C. Theeler*
                                                                  CAMELA C. THEELER
                                                                  UNITED STATES DISTRICT JUDGE